# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DEXTER MYLES,**

**Petitioner,**

v.

UNITED STATES OF AMERICA,

**Respondent.**

Civil Action No. 1:09cv86
Criminal Action No. 1:08cr91
(Judge Keeley)

*FILED*

*NOV 0 1 2010*

*U.S. DISTRICT COURT*
*CLARKSBURG, WV 26301*

## REPORT AND RECOMMENDATION

### I. Introduction

On June 23, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with a Memorandum of Law in Support. (Dkt.# 35 and 36). The Government filed its response on July 14, 2009.[1] (Dkt.# 48) Petitioner filed his reply on August 19, 2009. (Dkt.# 49).

### II. Facts

#### A. Conviction and Sentence

On January 5, 2009, petitioner signed a plea agreement, agreeing to plead guilty to Count 1 of a five-count indictment,[2] conspiracy to distribute marijuana, in violation of Title 21, U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.[3] The maximum penalty for the offense being pled to was specified

---

[1] On July 14, 2009, the Government filed a motion for an extension of time to respond (Dkt.# 42) which was granted by Order entered July 15, 2009 (Dkt.# 43).

[2] The Indictment also contained a forfeiture allegation regarding a number of items. (Dkt.# 1 at 6).

[3] (Dkt.# 1).

as imprisonment for a period of twenty (20) years, a $1,000,000.00 fine, and at least three (3) years supervised release. (Dkt.# 19 at 1). The parties stipulated and agreed that petitioner's total drug relevant conduct was between sixty (60) and eighty (80) kilograms of marijuana. (Id. at 4). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 12. Mr. Myles is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, if the Court sentences defendant to 63 months or less, defendant knowingly and voluntarily waives the right to appeal his sentence or the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus), where the sentence is 63 months or less. Correspondingly, the United States waives its right to appeal if the Court sentences the defendant to 37 months or more. Neither of these ranges are representative of defendant's estimation of a reasonable sentence, nor does this waiver prevent defendant from arguing for a sentence below 37 months

(Id. at 5).

On January 7, 2009, the petitioner, then aged 23, and a high school graduate with a year and a half of college, entered his plea in open court. (Dkt.# 46 at 12). Petitioner testified that he could read, write and understand English and denied any disabilities that would interfere with his full participation in the hearing. (Id. at 12 - 13). He denied any recent treatment for mental illlness or addition to narcotic drugs of any kind. (Id. at 13). Further, he testified that he had not taken any medication, drug or alcohol within the previous 24 hours. (Id. at 14). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 12 *supra*. (Id. at 4 - 9). The Court specifically asked petitioner if he and

his attorney had discussed the waiver of his appellate and post-conviction relief rights and petitioner replied "Yes, sir." (Id. at 18). The Court then explained that if petitioner filed an appeal or collateral challenge after receiving a sentence of 63 months or less, the Court could summarily dismiss either without giving him an opportunity to be heard, and asked petitioner if he understood that. Petitioner replied "Yes, sir." (Id. at 19 - 20). The Court asked petitioner if he and his attorney had gone over the plea agreement together before signing it, and petitioner said that they had. (Id. at 21). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be imprisonment for a period of twenty years, and a term of at least three years of supervised release (Id. at 27), but that the ultimate sentence he received could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 30). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone at that time, and it would not be possible to know until the sentencing hearing and petitioner said "[y]es, sir." (Id. at 25). The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 26 - 27 and 30 - 34). To establish a factual basis for the plea, the Government presented the testimony of Officer Ray Fluharty of the Fairmont Police Department, of the Three Rivers Drug Task Force and a DEA Task Force. (Id. at 35 - 45). Defense counsel then conducted a brief cross-examination of the witness. (Id. at 45 - 46). Petitioner did not contest the factual basis for the plea.

After the factual basis for the plea was presented, the petitioner entered his plea. (Id. at 46). The Court asked petitioner if he believed that he was, in fact, guilty of Count One of the indictment and petitioner advised the Court that he was. (Id. at 26). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 20 - 21). The Court further asked petitioner whether he thought that there was anything he thought that his lawyer

left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, sir." (Id.). At the conclusion of the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily, with full understanding of its consequences, and that the elements of the crime in Count One had been established beyond a reasonable doubt. (Id. at 47). Petitioner did not object to the Court's finding.

On April 17, 2009, petitioner appeared before the court for sentencing. Petitioner testified that he had had the opportunity to read, go over, and discuss any issues with counsel that the Presentence Report ("PSR") may have raised. (Dkt.# 45 at 4). Neither petitioner nor the Government entered any objections to the PSR.

Petitioner was found to have a base offense level of 22; with a two-level increase for possession of a firearm during drug trafficking activity, he had an adjusted offense subtotal of 24. (Id. at 6 - 7). After a two-level reduction for acceptance of responsibility, plus a third level granted by motion of the Government, petitioner's total offense level was 21. (Id. at 7). With a criminal history category of I, the Court found that the Guidelines called for a sentencing range of thirty-seven to forty-six months imprisonment. (Id.). Petitioner declined the opportunity to allocute. (Id. at 8 - 9). Defense counsel asked, pursuant to the plea, for a recommendation of a sentence toward the bottom end of the guidelines. (Id. at 9). The Government had no objections to that recommendation. (Id. at 11). The Court commended petitioner for his good behavior on bond and permitted him to remain on bond and self-report at the designated time. (Id.).

Taking all necessary information into consideration, the Court sentenced petitioner to serve a term of 37 months imprisonment, the lowest end of the guideline, recommending that he participate in the 500-hour RDAP program, with a three year post-imprisonment term of supervised release.

(Id. at 12). The terms of the various forfeitures that had not yet been accomplished were discussed. (Id. at 13). The Court reiterated with petitioner the waiver of his appellate and habeas corpus rights, noting that since he had received a sentence well within the sixty-three months or less prescribed by the plea agreement's waiver, that he was well within his waiver provision as to those rights. Defendant denied having any questions about his waiver of appellate and collateral attack rights. (Id. at 14).

## B.    **Direct Appeal**

Petitioner did not file a direct appeal.

## C.    **Federal Habeas Corpus**

### **Petitioner's Contentions (Dkt.# 35 and 36)**

Petitioner raises two grounds in his § 2255 motion:

1) ineffective assistance of counsel, prior to the entry of his guilty plea, for failing to properly investigate the facts of the case and relevant case law applicable to the guideline gun enhancement, thereby permitting petitioner to enter a plea based on the resultant misadvice; and

2) an ineffective assistance of counsel claim based on his counsel's failure at the sentencing hearing, to address or discuss the PSR and to argue "relevant issues," specifically, the application of the gun enhancement to his base offense level that precluded his eligibility for a 'safety-valve' consideration which would have afforded him a two-level reduction in his guideline range. Petitioner argues that the mere presence of a gun, in a separate location in a house where drugs are also found in a different location, does not rise to the level of a Section 924(c)(1) violation. He contends that had counsel argued this point instead of being unprepared, then he would have received a sentence of no more than 30 months, or possibly even less.

### Government's Response (Dkt.# 48)

The Government contends that counsel was not ineffective. In his plea agreement, petitioner stipulated and agreed to the two-level gun enhancement, and also agreed to its forfeiture, acknowledging that it was property used to facilitate the offense of conviction, conspiracy to distribute marijuana. Further, at his plea hearing, despite his now claiming otherwise, petitioner denied having any objection to the Government's witness' testimony regarding the location of the firearm and its proximity to the drugs. During his Rule 11 colloquy, he testified that he had read the plea agreement, fully understood it, had discussed it with counsel before signing, and that he understood its consequences. He was specifically questioned by the Court as to the application and potential consequences of the gun enhancement and he said that he understood. Furthermore, petitioner's reliance on the case law cited in support of his argument is misplaced, as petitioner was not charged with a violation of Title 18, U.S.C. § 924(c). Petitioner's own memorandum acknowledges that he possessed the firearm in the same house as the drugs, which is sufficient for the enhancement. However, what petitioner fails to acknowledge is that some of the proceeds of the sales, and some of the drugs were actually found in the same room as the loaded gun. Accordingly, the gun enhancement was both appropriate and lawful. Finally, petitioner knowingly and voluntarily waived his right to bring a § 2255 motion.

### Petitioner's Reply (Dkt.# 49)

Petitioner reiterates his claims and his reliance on the same case law cited in his § 2255 motion, contending that the Government failed to respond to his ineffective assistance of counsel claim of improper investigation. He claims that he "unknowingly plead to" the firearm enhancement because of his attorney's failure to research applicable law and advise him accordingly. (Dkt.# 49

at 3). He asserts that he is ineligible for full participation in the long term drug treatment program (RDAP) at the prison, with its concomitant early release to a halfway house, because of the firearm enhancement in his PSR. (Id. at 4).

Petitioner requests an evidentiary hearing to prove that there is no basis to the firearm enhancement or, in the alternative, he requests that the Court expunge the firearm enhancement from his PSR, so that he can participate in the RDAP program that the Court recommended. (Id.).

## D.    Recommendation

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Further, petitioner's claim of ineffective assistance of counsel at sentencing, although falling outside of the waiver, has no support in either fact or law.

## III. Analysis

### A.    Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B.    Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally

attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as

a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception

recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v. Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. <u>Braxton</u>, 358 F. Supp. 2d at 503, n. 2. Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." <u>Id.</u> at 503. (collecting cases).

The unpublished *per curiam* decision in <u>United States v. Morris</u>, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.#46 at 18). Further, petitioner

specifically testified that he understood that, incident to paragraph 12 of his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within sixty-three months or less. (Id. at 18 and 19 - 20). His sentence was 37 months imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus precluding a review of the merits of his first claim of ineffective assistance of counsel for performing a poor investigation.

However, a waiver analysis may not be dispositive of all of the issues in this petition. Because petitioner has also alleged that counsel was ineffective after the entry of the guilty plea, for failing to object to the firearm enhancement in the PSR that subjected him to a two-level guideline enhancement, that claim will be given review.

## C.      Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry

of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any claim of ineffective assistance of counsel occurring prior to the entry of his guilty plea. Therefore, petitioner's Ground One claim that counsel failed to properly investigate the facts and law applicable to the gun enhancement to his sentence is waived.

**Ground Two: Whether Counsel's Performance was Ineffective at Sentencing for Failing to Object to Gun Enhancement to the Sentence Petitioner Received.**

Petitioner contends that at sentencing, counsel was ineffective because he was "unprepared to argue relevant issues" as to the PSR. Specifically, petitioner alleges that counsel failed to object when petitioner received a firearm enhancement with a two-level guideline base offense increase, pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a firearm during drug activity. He contends that this enhancement was inapplicable to him and it has precluded his full eligibility for the RDAP

13

program in prison, including its early release to a halfway house. He argues that if had counsel only objected to this enhancement at the sentencing hearing, he could have received a lesser sentence than he otherwise did. He argues that the enhancement should not have applied because his gun was not in the same place as were the drugs and proceeds from the sales of the drugs. In support, he relies on Bailey v. U.S., 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 472 (1995) and U.S. v. Hayden, 85 F.3d 153 (4th Cir. 1996), as well as a number of cases from other jurisdictions.

To begin with, petitioner's reliance on Bailey and Hayden, *supra,* is inapposite. Both of those cases involved defendants who were challenging their convictions after being charged with *"using or carrying"* a firearm during and in relation to a drug trafficking crime, pursuant to 18 U.S.C.S. § 924(c)(1). Under § 924(c)(1), a defendant could not be charged for "using or carrying" a weapon, merely for storing a weapon near drugs or drug proceeds. Here, petitioner was never charged with a violation of 18 U.S.C.S. § 924(c)(1), let alone convicted of it, so the reasoning of the Bailey and Hayden courts are inapplicable. Petitioner's two-level increase to his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1) was for *possession* of a firearm during drug trafficking activity.

Next, contained within petitioner's plea agreement, at paragraph 3, is a list of property to be forfeited, with this language:

> 3. **Defendant further agrees to abandon and/or forfeit (by either judicial or administrative proceedings) any and all interest he has, if any,** as proceeds from the commission of the offense of conviction **or as property used to facilitate the offense . . . (iii) Hi-Point 40 caliber pistol[.]**

Dkt.# 19 at 2. *(emphasis added).*

In paragraph 11 of the plea agreement, this statement regarding the parties' stipulations is made:

**11. Pursuant to Sections 6B1.4, 1B1.3, and 2D1.1 [Application Note 12] of the Guidelines, the parties hereby stipulate and agree** that the total drug relevant conduct of the defendant is between sixty (60) and eighty (80) kilograms of marijuana. **The parties further agree that a two level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) is appropriate for the possession of a firearm** . . .

Id. at 4. *(emphasis added)*.

Petitioner's signature is on each and every page of the plea agreement, including the pages

these paragraphs were found. The date he signed the plea agreement was January 5, 2009.

At petitioner's January 7, 2009 plea hearing, this exchange was had:

THE COURT: Did you under - - also understand that guideline sentencing as well as actual sentencing, is driven by a number of factors such as, your relevant conduct in the case that is now before the Court? . . . **It's also driven by whether or not you had a firearm and possessed that firearm in relation to a drug trafficking crime or in the furtherance of that crime. . . Did you understand all that?**

THE DEFENDANT: **Yes, sir**.

THE COURT: Now did you understand that by stipulating to sixty (60) to eighty (80) kilograms of marijuana as your relevant conduct, that the Judge could from the presentence report or information she receives during the sentencing hearing accept or she could find that there was [more] or less relevant conduct?

THE DEFENDANT: Yes, sir.

THE COURT: **Did you also understand that if she determined that you possessed a firearm as stipulated that that would result in an enhancement of your guideline and likely, also your actual sentence?**

THE DEFENDANT: **Yes, sir.**

(Dkt.# 46 at 24 - 25). *(emphasis added)*.

In establishing the factual basis for the plea, the Government witness testified that, incident

to the search of petitioner's residence, found were a total of approximately nine and a half pounds

of marijuana in various shopping bags, as well as a Nike shoe box containing $20,425, and a cash

counter. (Dkt.# 46 at 40).[4] One of the shopping bags of marijuana was found underneath petitioner's bed. (Id. at 45). The Hi-Point 40 caliber pistol was also found upstairs underneath petitioner's bed. (Id. at 44 - 46). Forty-caliber ammunition was found in the same bedroom. (Id. at 44), as was the $20,425 in the Nike shoe box. (Id. at 40). Petitioner was present in the courtroom during all of this testimony. After the witness finished testifying, this exchange was had:

> THE COURT: Were you able to hear the testimony of the officer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there any of that testimony that you disagree with either on your own, from your own knowledge or from your review of the Government's case?

THE DEFENDANT: No, sir.

(Id. at 46).

According to the probation officer's report in the PSR, when the agents executed the search warrant at his home, they discovered a total of almost 10 pounds of marijuana, over $30,000 of drug proceeds, a cash counter, and a Hi-Point 40 caliber pistol. (Dkt.# 32 at 7). The Hi-Point 40 caliber pistol was loaded and chambered; it was found hidden underneath petitioner's mattress in the master bedroom, in close proximity to drugs and drug proceeds. (Id. at 8). Located in the same bedroom where the gun and cash counter were found was $20,045 of the total drug proceeds. (Id. at 7). The PSR was prepared on January 30, 2009 and disclosed to counsel on February 3, 2009. (Id. at 1).

Two and one-half months later, at the April 17, 2009 sentencing hearing, petitioner testified thus:

> THE COURT: Have you had a chance to read the presentence report?

---

[4] A second Nike shoe box was also found, with an additional $9,651, and another $1,000 was found in petitioner's girlfriend's purse; $200 of that money was the "buy money" from the November 16 buy. (Id.).

16

THE DEFENDANT: Yes.

THE COURT: And have you had a chance to go over it and discuss issues that it may have raised with Mr. Murphy?

THE DEFENDANT: Yes.

THE COURT: Now, Mr. Murphy, there were no objections filed . . . is that correct?

[discussion re: forfeiture issues] . . .

THE COURT: Okay. All right. Very well. There being no objections and no issues to decide prior to the sentencing, the Court places the presentence report in the record[.]

(Dkt.# 45 at 4 and 6).

Petitioner's base offense was enhanced by two levels, pursuant to U.S.S.G. § 2D1.1(b)(1) for

possession of a firearm during drug trafficking activity. U.S.S.G. § 2D1.1(b)(1) reads:

> PART D - OFFENSES INVOLVING DRUGS AND NARCO-TERRORISM
>
> 1. UNLAWFUL MANUFACTURING, IMPORTING, EXPORTING, TRAFFICKING, OR POSSESSION; CONTINUING CRIMINAL ENTERPRISE
>
> §2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy
>
> (b) Specific Offense Characteristics
>
> (1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

U.S.S.G. § 2D1.1(b)(1). (November 1, 2008).

According to the Guidelines commentary, "[t]he enhancement for weapon possession reflects

the increased danger of violence when drug traffickers possess weapons." 2D1.1 cmt. n.3. The

Guidelines instruct that the enhancement "should be applied if the weapon was present," Id. -- that

is, if the government shows "that the weapon was possessed during the relevant illegal drug activity,"

17

U.S. v. Rhodes, 322 Fed. Appx. 336, 342, 2009 U.S. App. LEXIS 7844 (4th Cir. 2009) (unpublished *per curiam*), *quoting* United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001). However, the Guidelines specify that the enhancement should not be applied if " it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 cmt. n.3. As illustration, the Guidelines instruct that "the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Rhodes, *supra* at 342. Here, it is clear that the weapon was connected with the offense: it was loaded and chambered, hidden under the mattress of a bed under which a shopping bag of marijuana was found, and nearby, $20,045 in drug proceeds.

Not only does petitioner's claim that counsel was ineffective at the sentencing hearing for failing to object to the two-level enhancement for possession of a firearm have no support in the law, the facts he alleges are not even supported by the record. Petitioner signed the plea agreement on January 5, 2009 and was not sentenced until April 17, 2009, three and a half months later. The plea agreement clearly stated that the firearm was being forfeited because it was "property used to facilitate the offense." Further, in paragraph 11 of the plea agreement, petitioner himself stipulated and agreed that the two level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was "appropriate for the possession of a firearm." He entered his plea in open court after each and every paragraph of the plea agreement was read or summarized aloud. He then testified that: he and his counsel had reviewed the agreement before he signed it; he understood that his minimum sentence could be no more than twenty years; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the sentencing hearing. He was specifically asked by the Court whether he understood that the gun enhancement could lengthen his sentence and he answered in the affirmative. Petitioner also said that he was completely satisfied

with his counsel, that they had met or conferred by phone twenty times (Dkt.# 46 at 20), that his lawyer had done a good job, "never refused to do anything that I asked him to do" (Id.). He further testified that counsel had left nothing undone that he thought should have been done, nor had he done anything improperly, and that he was completely satisfied with the legal assistance, counseling, advice and actions of his retained counsel in the case. When asked by the Court whether, looking back, if there was anything counsel had done that petitioner wished he had not done, he denied that there was. (Id. at 20 - 21).

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

At the plea hearing, the petitioner stated that there were no agreements, verbal or otherwise, outside of the written plea agreement. It was not until after petitioner had been sentenced, and decided he was unhappy with his sentence, that he asserted that counsel was ineffective for not challenging the gun enhancement. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has the petitioner provided sufficient evidence that any outside agreements existed. See Sutton v. United States, supra (petitioner must establish grounds by a preponderance of the evidence).

Furthermore, petitioner had already stipulated and agreed to the gun enhancement, three and a half months before he was sentenced. Counsel had no basis for objecting to a guideline-mandated enhancement to his sentence and thus cannot be found ineffective for failing to do so. Petitioner's thirty-seven month sentence is a result of his own criminal actions, not because of anything that counsel did or failed to do.

Finally, it should be noted that, generally speaking, claims of error regarding application of the Guidelines cannot be raised in a habeas petition. United States v. Pregent, 190 F.3d 279, 283 - 84 (4th Cir. 1999); United States v. Mikalajunas, 186 F.3d 490, 495 - 96 (4th Cir. 1999). A claim not attacking the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Because an alleged misapplication of statutory sentencing requirements does not constitute a miscarriage of justice, Mikalajunas, supra at 495 (4th Cir. 1999), petitioner's claim is barred. See Stewart v. United States, 2006 U.S. Dist. LEXIS 54553 at *13-14 (E.D. Va. July 21, 2006).

Because petitioner wove his claim that the two level guideline enhancement for possession of a firearm should not apply into a claim of ineffective assistance of counsel, petitioner also has the burden of demonstrating counsel's deficient performance and how it prejudiced him. Because petitioner cannot establish the underlying claim, petitioner cannot establish that counsel was deficient or that petitioner was prejudiced by counsel's failure to challenge the issue. Furthermore, petitioner's claim, despite his attempt to recharacterize it as an ineffective assistance of counsel claim, is essentially a thinly-disguised attempt to evade his waiver of habeas relief rights by challenging his sentence or the manner in which it was determined. As such, it falls squarely within

his waiver. Relief should be denied.

## IV. <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING this case with prejudice**.

Further, petitioner's request for an evidentiary hearing should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: ~~October~~ *NOVEMBER* _/_, 2010

/s/ _John S. Kaull_
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE